Patrick J. Picariello, J.
Action to recover the sum of $10,000, representing excess insurance benefits over a minimum basic group amount of $20,000 provided under a group policy issued by the defendant.
Plaintiff’s complaint consists of two causes of action. The first is predicated upon an alleged agreement for interim life insurance in the amount of $30,000 and the second cause of action is based upon a policy of group insurance and a certificate of insurance allegedly issued thereunder by the defendant.
Defendant’s answer alleges, inter alia, a substantial general denial and more specifically, a denial of making and issuing the interim term life insurance alleged in the complaint. As a complete defense to plaintiff’s complaint, it alleges a tender of its check in the sum of $20,000, which was accepted and collected by the plaintiff in accord and satisfaction and in full payment and discharge of the claim.
The salient facts are not in dispute. The resulting controversy requires a judicial interpretation of the documents submitted in evidence as the same may disclose the intentions and agreements of the parties and their respective rights and obligations emanating therefrom.
The deceased was executive vice-president of the purchaser of the subject policy and personally negotiated the same with the defendant for the benefit of its ultimate beneficiaries, including himself. It appears that prior to February 14, 1962 deceased’s employer was the owner of a similar group life insurance policy issued by another company which, among other provisions, insured the life of its employees by employment classifications and categories. This policy was to expire on March 1, 1962.
Prior negotiations with the defendant (defendant’s Exhibit D, dated Nov. 10, 1961) resulted in a preliminary application for the subject group insurance to be executed by the defendant *881 and deceased’s employer (plaintiff’s Exhibit 3) on February 14, 1962. The stated amount of insurance benefit provided for in both these exhibits for employees in the classification of deceased’s employment was $30,000. Both the preliminary application above-mentioned, deceased’s employer’s check for $250 as a deposit payment toward the first monthly premium, and a so-called evidence of insurability (plaintiff’s Exhibit 4) executed by the deceased were received at the defendant’s home office on February 26, 1962 (defendant’s Exhibit H).
The deceased passed away on March 11, 1962. A special enrollment card (plaintiff’s Exhibit 2) dated February 23, 1962 and signed by the deceased was received by the defendant on March 12, 1962. Claim for the payment of $30,000 was thereafter made by plaintiff, and upon receipt of this claim and proof of death (plaintiff’s Exhibit 5) defendant issued its check for $20,000 to plaintiff (defendant’s Exhibit A) on April 17, 1962. Plaintiff thereupon instituted the within proceedings to enforce payment of the additional $10,000.
It is interesting to note that the subject policy mailed by the defendant on March 29,1962 was made retroactively effective as of March 1, 1962.
The pleadings present two questions for determination: first, was the deceased insured at all under the subject policy, and, if so, the amount of coverage; and second, was the payment made by defendant accepted by plaintiff in accord and satisfaction under the circumstances of this case.
As to whether the deceased was insured at all: It is the defendant’s contention that its underwriting rules and regulations prevent it from writing any risk such as the one with which we are herein concerned unless it has before it for a proper evaluation thereof all the information required in the following documents, and the documents themselves, properly executed: (1) the preliminary application for the insurance; (2) the special enrollment card; (3) the deposit premium check. Both the preliminary application for the insurance and a deposit payment check were admittedly received by defendant before decedent’s death. The special enrollment card Avas not received by it until after the death of the deceased. This card identifies the group participant by name, address, age, sex and employment classification, and also designates the beneficiary upon death.
Defendant contends that because of the deceased’s failure to comply timely Avith this requirement it Avas unable to evaluate the risk properly. No policy was therefore in effect on March 11, 1962, the date of deceased’s death, and deceased was not *882 included in the group when the policy was finally issued on March 29, 1962, although the effective date thereof was retroactively fixed as of a date prior to decedent’s death.
The special enrollment card requests the following information of the applicant: policy number, name of employer, sex, birthday, date employed, occupation, annual salary, marital status, name and relationship of beneficiary, and date of execution of same by the applicant.
It is the court’s opinion that it may not consider these rules and regulations in determining this question unless the deceased had been made conscious thereof during his lifetime, had been apprised of the urgent necessity for his compliance therewith and had been made aware of the drastic result noncompliance would have had upon the binding features of the insurance contract.
Moreover, nowhere in the documents presented to the court was there any indication of the necessity to deliver this card to the defendant in order for there to be a binding contract. If the defendant required this card before binding itself, how easily it could have so provided both in the document and/or in its preliminary form of application (plaintiff’s Exhibit 3). In fact, defendant’s Exhibit D, prepared and submitted by the defendant to the deceased, bears this tell-tale legend: ‘ ‘ new census data may be required after ninety days.” This language is clear and unambiguous. It certainly cannot be construed as a requirement, or condition precedent, to the binding of the risk.
Let it be assumed for the moment that the court should take into consideration the fiscal utility which the defendant hoped to derive from this transaction as the principal basis or criterion of its intention to be bound by the agreement; and that as a result of not having the card in its possession it could not make a proper evaluation thereof. It would be ludicrous to assume that physical possession of the card was necessary. The information therein contained was what was required.
It appears from the contents of defendant’s Exhibit D that all of the necessary information excepting the name of the designated beneficiary (which cannot be argued was necessary for this proper evaluation) was in defendant’s possession not later than November 10, 1961, the date of the exhibit. Once again, the legend contained in such exhibit reads: ‘ ‘ new census data may be required after ninety days. ” The inescapable conclusion follows that defendant had the census data necessary for a proper evaluation before November 10, 1961. This, in the court’s opinion, constitutes a fair, logical and reasonable conclusion drawn from the fact that by November 10, 1961 the *883 defendant was alóle to determine and ascertain the premium for the coverage to the mill. How could it have been able to make this computation in the absence of the census data, namely, the number of lives, classification of employment, age, sex and the like?
The court concludes that this argument is tenuous and unsubstantial ; that a physical delivery of the special enrollment card was not necessary to effectuate a binding insurance contract and that consequently the deceased was included in the group on the date of his death for at least the minimum coverage of $20,000.
We now come to the second question, and that is, was the deceased covered for the additional $10,000? Again it becames incumbent upon the court carefully to consider and construe the documents presented to it in order to ascertain the true intention and agreements of the parties to the insurance contract.
In defendant’s Exhibit D we find the following provision: “ Any amount in excess of $20,000 is subject to evidence of insurability satisfactory to the company.”
On February 13, 1962 the deceased executed on behalf of his employer defendant’s preliminary application for group insurance (plaintiff’s Exhibit 3) wherein application for $30,000 life insurance was made for employees in the deceased’s employment classification. This application contains the following provision: “If, in accordance with Phoenix Mutual’s group underwriting rules, evidence of insurability is required for any employee, such employee will be insured for the amount for which he is eligible under the schedule only on the date Phoenix Mutual accepts such evidence as satisfactory. From the effective date of insurance in the group until the date Phoenix Mutual accepts such evidence as satisfactory, such employee will be insured for such lesser amount as is authorized under Phoenix Mutual’s current group underwriting rules. The evidence of insurability referred to is required-, if not submitted within a reasonable time Phoenix Mutual reserves the right to terminate all or any part of the group insurance for which application is made.”
On February 14, 1962 the deceased executed a form called “evidence of insurability” (plaintiff’s Exhibit 4). This is a question and answer form. Attached thereto is an authorization signed by the deceased which reads as follows: 11 Authorization to physicians or practitioners, hospitals, or institutions from which I have received treatment or advice. Please give the Medical Department of the Phoenix Mutual Life Insurance Company all information concerning my past medical history, symptoms, treatment, result of examination and diagnosis. My con *884 sent is hereby granted to use this original or a photostatic copy as equally valid authorization.”
This authorization contemplated an investigation by the defendant as to deceased’s insurability. It clearly indicated, as do plaintiff’s Exhibit 3 and defendant’s Exhibit D, that satisfactory evidence of insurability was required before the defendant could be bound for the additional $10,000. This, in' the court’s opinion, created a condition precedent before the defendant could be bound for the additional $10,000 insurance. Defendant’s liability never became absolute therefor until the happening of the contingency; that is, until defendant received satisfactory evidence of deceased’s insurability. In other words, the condition precedent required the happening of the event before the liability to fulfill the policy matured into an enforcible obligation. Unfortunately, in this case, the death of the decedent within approximately 15 days after the receipt by the defendant of deceased’s eligibility of insurance form and authorization did not allow the defendant sufficient time to ascertain, by examination or otherwise, deceased’s medical insurability.
Plaintiff lays great stress upon the case of Gaunt v. Hancock Mut. Life Ins. Co. (160 F. 2d 599, 602) wherein the learned Circuit Court Judge L. Hand judicially stated that “insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.” That case is clearly distinguishable from the one at bar. Plaintiff’s reliance therein only serves to emphasize the inviolability of that legal tenet which holds that every case is peculiar unto itself and becomes its own precedent.
The difficulty with plaintiff’s position is that in the Gaunt case (supra) the court found confusion to resolve which it was compelled to resort to facts and circumstances surrounding the consummation of the entire transaction. Consequently, and in connection therewith, it became incumbent upon it to construe certain terminology, which it did adversely to the insurer. However, that determination was predicated on facts found by the court, sitting as the trier of the facts, facts which the court cannot find in the instant case.
It therein appeared that confusion had been created by applicant’s neglect to check either of the two alternate boxes contained in the application providing for the effective date of the insurance. Subsequently, a check was made in the box providing that the insurance was to become effective as of the date of the issuance of the policy.
*885 After trial, a finding of fact was made by the court that it had been the intention of the applicant that he be covered “ from the date of the completion of the medical examination.” At this point, it is interesting to note that the application contained the following provisions: “if the company is satisfied that on the date of the completion of Part B of this application I was insurable in accordance with the company’s rules for the amount and on the plan applied for without modification, and of this application, including said Part B is, prior to my death, approved by the company at its home office, the insurance applied for shall be in force as of the date of completion of said Part B.” It appears, and the court found, that the applicant Gaunt was examined physically on two occasions by the company’s doctor; that on each of these occasions the medical reports indicated that the applicant was passed and that the second report approved the application from a medical standpoint. The latter report was received by the insurer at its home office on the same day it received notification of the applicant’s demise.
The insurer disclaimed because, it contended, the “ application, including said Part B, was not prior to the applicant’s death, approved by the company.” Whereupon the court proceeded to make its finding to the effect that although the company never approved the application, if the applicant had lived, it would have done so.
In arriving at this determination, the court described the significance of the terminology thus attempted to be imposed by the insurer to be esoteric and further declared that the insurer must bear the burden of any resulting confusion.
The court cannot conceive of any maxim, or principle of law, enunciated in decisions of courts, which can be generally applicable to all cases; each ease must be decided on its own facts and circumstances.
Moreover, in construing the provisions contained in the documents considered as a condition precedent to defendant’s liability for the excess insurance, the court finds the language therein employed neither cryptic nor enigmatic, nor is its significance and application unique or intelligible only to persons engaged in the insurance business. To the contrary, the language employed is banal, conventional and customary and the use thereof neither unorthodox nor unusual. It should be considered that the deceased was executive vice-president of a company that employed over 100 employees and the court cannot impute to him unfamiliarity with the meaning and *886 significance of any of the words, sentiments or ideas expressed in the subject provisions.
Under the circumstances, the court finds that the provision for the excess insurance of $10,000 was dependent upon a condition precedent, that is, the receipt by the company of satisfactory evidence of insurability. There was none in this case. Although defendant’s agreement to fulfill its promise to insure deceased for the additional sum of $10,000 existed on February 14, 1962, its liability was altered by the nonhappening of the event upon which performance was contingent.
The third question, that is, whether plaintiff’s acceptance of the $20,000 constituted an accord and satisfaction of her claim against the defendant need not be decided, in view of the foregoing disposition. The court is of the opinion, however, that the circumstances under which the check was delivered by the defendant and subsequently collected by plaintiff in August, 1962, amply outlined and described in the communication from plaintiff’s attorney to the defendant dated June 7, 1962 (defendant’s Exhibit B) and its reply thereto dated June 12, 1962 (defendant’s Exhibit C), clearly indicate that there was an actual dispute between the parties, and the check delivered by defendant to plaintiff was accepted by plaintiff in full accord and satisfaction.
Complaint dismissed, with costs.